**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Denise A. Coleman-Barnes,** | ) | **CASE NO. 1:04 CV 914** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Donald L. Evans, Secretary** | ) | **Memorandum of Opinion and Order** |
| **U.S. Department of Commerce ,** | ) | |
| **Defendant.** | ) | |

### Introduction

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 17). This is an employment discrimination case. For the following reasons, the motion is UNOPPOSED and GRANTED.

### Facts

Plaintiff, Denise A. Coleman-Barnes, an African American female, proceeding *pro se,* filed this Complaint against defendant, Donald L. Evans, Secretary of the U.S. Department of Commerce, following her termination from employment.

The U.S. Department of Commerce is an agency in the Executive Branch of the

1

federal government which includes the Bureau of the Census (hereafter, the Bureau or the Census). The Bureau is headed by a Director who is assisted by a Deputy Director and an executive staff composed of Associate Directors. The Bureau has 12 Regional Offices, each headed by a Regional Director who reports to the Associate Director for Field Operations. (Doc. 17 Ex. A).

The Bureau collects and provides statistical data about the people and economy of the United States and performs the Decennial Census. (*Id.* Ex. B). As part of the 2000 Decennial Census, the Bureau opened a Regional Census Center (RCC) in each of its regions, including the Detroit Region which covers Cleveland. Dwight Dean is the Regional Director of the Detroit Region. (*Id.* Exs. C, E). The Bureau also opened around 520 Local Census Offices (LCO) and hired temporary employees to fill more than 800,000 temporary employment slots. (*Id.* Ex. D). The Cleveland East LCO 2434 (hereafter, Cleveland East), to which plaintiff was assigned, was under the direction of the Detroit RCC. (*Id.* Ex. I).

In March 2000, Decennial Census questionnaires were sent out to housing units. If the occupants of the housing units did not respond, each LCO was responsible for sending out Nonresponse Follow-Up (NRFU) Enumerators, field personnel responsible for following up with the housing units that did not respond and collecting the requested information for each housing unit. (*Id.* Ex. F). The NRFU was to be completed in a period of eight weeks. (*Id.* Ex. G). The "tight schedule" required that all field personnel be trained and ready to enter the field to complete this phase of the Census. (*Id.* Exs. F, H).

Plaintiff was hired as a Field Operations Supervisor in October 1998 and promoted to Assistant Manager for Field Operations (AMFO) in July 1999. (*Id.* Ex. K; Compl.)

2

Plaintiff's 1999 appointment to AMFO was a temporary appointment, not to exceed July 15, 2000. (Doc. 17 Exs. K, W). As AMFO, plaintiff was responsible for supervising the LCO field operations, directly supervising 10-15 employees and indirectly supervising about 400 employees at peak office operations during the NRFU phase. Plaintiff was responsible for the activities of field personnel and several office workers during all field operations, and for ensuring that field personnel were properly trained in completing field operations. The AMFO directly trained the Field Operations Supervisors and oversaw training of Crew Leaders and Enumerators. The AMFO was responsible for the timely and efficient completion of Decennial fieldwork, and reviewing and monitoring progress reports ensuring that field operations were timely completed within budget allocations. The AMFO was to be the principal technical advisor on field operations in the LCO. (*Id.* Exs. F, I, O).

At the relevant time herein, Sue Hack, a Caucasian, was the Area Manager for the Detroit RCC and plaintiff's second level supervisor. Hack was responsible for oversight of 10 LCOs, including Cleveland East, in the Detroit Region. (*Id.* Exs. I, M). On Saturday, April 15, 2000, the Cleveland East LCO, and other LCOs under Hack's supervision, received a "data dump" consisting of addresses which needed to be printed and assigned to Enumerators. Ms. Hack contacted the LCOs to let them know that the data had been sent earlier than the expected Sunday date. Plaintiff had planned on coming into work on Sunday. Hack was unable to contact Jacqueline Winston, an African American, the Local Census Office Manager (LCOM) and plaintiff's immediate supervisor. (*Id.* Ex. J). Hack called plaintiff, who said she could not come into work because she did not have child care. Hack told plaintiff that, as AMFO, she should be concerned about preparing the assignment books as soon as possible

3

because if she "starts off on the wrong foot" she would end up behind during NRFU operations. Plaintiff did not go into work that day. Hack went to the Cleveland East LCO and worked with another Cleveland East employee until late that night. (*Id.* Ex. I).

On April 18, 2000, plaintiff contacted an EEO Counselor and alleged that she was being treated differently than other AMFOs because of her race. (Doc. 17 Ex. P).

Ina Coleman, an African American, was the Regional Technician responsible for monitoring the progress of the LCOs assigned to her, including Cleveland East, and ensuring that the LCOs were following policies and procedures. (*Id.* Exs. I, N). On April 25, 2000, Coleman observed several problems with the Enumerating sessions for the NRFU at Cleveland East. After talking with plaintiff and then failing to observe improvement, Coleman contacted Hack who traveled to Cleveland and visited several Enumerator training sessions conducted by the Cleveland East LCO. Hack observed many problems. Hack addressed the problems with Winston and plaintiff, who were "combative about it." Hack stayed in Cleveland for several more days "to get some organization to the operation." Winston and plaintiff were angry because they perceived that Hack was scrutinizing them more than other offices and that she was "setting them up for failure." Hack told them that if they failed, she failed. (*Id.* Ex. I).

During a regularly conducted meeting of Regional Director Dwight Dean with the Assistant Regional Census Managers and Area Managers to discuss the performance of LCOs in the Detroit Region, Dean asked Hack if she felt Cleveland East LCO would be able to complete NRFU operations on time. Hack had not seen any cooperation and so responded that they could not and recommended plaintiff's termination. (*Id.* Ex. I).

4

On May 8, 2000, Hack sent Darlene Slarb, Personnel Management Specialist, an e-mail stating her reasons for recommending plaintiff's termination:

> The Cleveland East LCO, 2434 is in chaos. The LCOM and the AMFO have done everything possible to make NRFU a disaster. This was an ELCO and both managers are experienced in other operations and I fully expected them to be capable of doing NRFU. The Regional Technician has tried to work with them and I have spent about four days there in the last two weeks. The LCOM is showing no leadership and the AMFO is showing a lack of procedural knowledge and is unable to get the operation on track. I am attaching some notes on each manager. I would like to move on this as soon as possible as time is of the essence. ...

(*Id.* Ex. Q). Hack's attached notes regarding plaintiff state that plaintiff "is in over her head" and "is not following proper training procedures and the crews are in chaos." Several specific examples are noted. Hack concludes, "[plaintiff] is at a loss as to how to correct things. I have had a Regional Tech in the office for a week and she is, in effect[,] running the office now." (*Id.*). Slarb provided Hack with a draft termination letter for plaintiff. (Doc. 17 Ex. I).

On May 10, 2000, Hack notified Winston that she and Tom Chodozko, a Caucasian, the Assistant Regional Census Manager (ARCM) who supervised Hack, were coming to the Cleveland East LCO that day to talk with Winston and plaintiff. Hack was informed that plaintiff was not in the office that day. Chodzko had intended to address the issues with plaintiff but was unable to contact her that day or the next. After consulting Slarb, Chodzko sent plaintiff's termination letter by Federal Express. (*Id.* Ex. I). Dean approved the decision to terminate plaintiff and signed the termination letter. (*Id.* Exs. I, K).

Effective May 10, 2000, plaintiff was terminated from her temporary appointment for "unacceptable performance." The termination letter states examples of the deficiencies and notes, "Given the heavy workload and short-term suspense dates associated with the

5

Decennial Census 2000, the Census Bureau cannot afford to give you additional time in which to make the necessary improvements in your performance." (*Id.* Ex. K). At the time of plaintiff's termination, the Cleveland East LCO 2434 had completed only 15.21% of its NRFU workload. (*Id.* Ex. R).

On May 16, 2000, plaintiff filed a Complaint of Employment Discrimination with the Census Bureau. (*Id.* Ex. S). After plaintiff's termination, Ina Coleman served as AMFO for about 6-8 weeks during NRFU. After NRFU, a white male who was a former FOS, filled the AMFO position. (*Id.* Ex. M).

A two-day hearing ensued before the Equal Opportunity Commission's Cleveland District Office. Administrative Judge Debra Sharp issued a decision finding that plaintiff failed to establish that she was discriminated against based on her race or sex, and that she was not retaliated against. (*Id.* Ex. T).

Plaintiff thereafter filed this Complaint setting forth one claim for relief alleging wrongful termination in that it was a result of retaliation, and based on her race and sex. This matter is now before the Court upon defendant's Motion for Summary Judgment. Plaintiff has not opposed the motion.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

6

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with affidavits," if any, which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest upon the
> mere allegations or denials of [his] pleadings, but [his
> response], by affidavits or as otherwise provided in this rule,
> must set forth specific facts showing that there is genuine issue
> for trial. If he does not respond, summary judgment, if
> appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence

of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

In the event that a party does not respond to a Motion for Summary Judgment, Federal Rule of Civil Procedure 56(e) provides that summary judgment shall be entered "if appropriate."

**Discussion**

**(1) Retaliation**

Plaintiff's Complaint alleges that her termination was in retaliation for her participation in Jacqueline Winston's March 22, 2000 EEO complaint and the filing of her own April 18, 2000 EEO complaint.

Title VII retaliation claims are governed by the *McDonnell Douglas* burden-shifting framework. *Dama v. Target Corp.*, 2005 WL 1027496, *1 (6th Cir. May 3, 2005) (citing *Weigel v. Baptist Hosp.*, 302 F.3d 367, 381 (6th Cir.2002) and *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)). As such, to establish a prima facie case of retaliation a plaintiff "must show that (1) [she] engaged in a protected activity; (2) the defendant had knowledge of the plaintiff's protected conduct; (3) the defendant took an adverse employment action towards the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Id*.

If the plaintiff proves a prima facie case, the burden of production shifts to the

8

defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). "If the defendant meets this burden, the plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination by establishing that the proffered reason: 1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action." *Id.* (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994) ). If the plaintiff demonstrates that the defendant's proffered, non-discriminatory reason is a pretext, then the fact finder may infer unlawful retaliation. *Id.* (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 344 (6th Cir.1997) ). "Throughout the entire *McDonnell Douglas* framework, the plaintiff bears the burden of persuasion." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

      Defendant asserts that plaintiff cannot establish a prima facie case of retaliation and that, in any event, defendant has articulated legitimate, non-discriminatory reasons for its actions. As plaintiff did not oppose the motion, she presents no controverting evidence. Thus, for the following reasons, plaintiff's retaliation claim fails.

      Defendant presents evidence that Sue Hack, the decision maker, did not have knowledge of plaintiff's EEO complaint until after plaintiff's termination. (Doc. 17 Ex. M). Because plaintiff failed to respond to the motion, she presents no evidence that Hack had knowledge of the plaintiff's EEO complaint or her participation in Winston's EEO complaint. Defendant further asserts that plaintiff fails to establish a causal connection between the protected activity and her termination. Again, plaintiff fails to present any such evidence. Therefore, plaintiff fails to prove a prima facie case.

9

Finally, defendant argues that even assuming plaintiff can establish a prima facie case, it has articulated legitimate, non-discriminatory reasons for plaintiff's termination.  This Court agrees.

As discussed above, plaintiff was terminated for her poor performance during NRFU operations, the most labor intensive phase of operations during the Decennial Census.  This phase entailed a significant increase in responsibilities to the AMFO position, including training of field personnel.  In late April 2000, Ina Coleman observed several specific problems with the Enumerator training sessions at Cleveland East for NRFU.  Coleman notified plaintiff of the problems and made an effort to resolve them.  When Coleman failed to see improvement in the training sessions, she contacted Sue Hack, who traveled to Cleveland and attended training sessions.   Hack observed the same problems during the critical NRFU phase.  Progress reports showed that the Cleveland East LCO lagged behind other LCOs in terms of percentage of NRFU work assignments completed.  Hack attempted to work out the problems with plaintiff and her supervisor.  Plaintiff refused to cooperate. Ultimately, during a meeting, Regional Director Dean asked Hack if she felt the Cleveland East LCO could recover under plaintiff's supervision and Hack stated that it could not.  As a result, Hack recommended plaintiff's termination.  Plaintiff fails to controvert this evidence.

For these reasons, plaintiff's retaliation claim fails.

**(2) Race and sex discrimination**

Race and gender based discrimination claims are governed by the familiar burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  Plaintiff

10

must first establish a prima facie case of discrimination by introducing direct evidence of intentional discrimination or, alternatively, by producing circumstantial evidence of discrimination by showing (1) that she was a member of a protected class, (2) that she suffered an adverse employment action, (3) that she was qualified for the position in question, and (4) that she was replaced by a person outside the protected class or that a similarly-situated individual not from the protected class was treated more favorably than she was.  If an employee has met the prima facie test, the burden shifts to her employer to produce a legitimate, non-discriminatory reason for its actions and then back to the employee to show that the employer's reason was merely a pretext for discrimination.  *Hilbert v. Ohio Dept. of Rehabilitation and Corrections,* 121 Fed.Appx. 104, *109 (6th Cir. 2005).

For the reasons stated above, plaintiff's claims of sex and race discrimination fail because she has not rebutted defendant's stated legitimate, non-discriminatory reason for her termination.  Moreover, because plaintiff failed to respond to defendant's motion, she failed to prove even her prima facie case of race and sex discrimination.  In fact, defendant demonstrates that plaintiff was not qualified for her position.  For the reasons stated with regard to her termination, this Court agrees.

**Conclusion**

For the foregoing reasons, defendant's Motion for Summary Judgment is unopposed and granted.

IT IS SO ORDERED.

                                           /s/ Patricia A. Gaughan
                                          PATRICIA A. GAUGHAN
Dated: 5/18/05                       United States District Judge